IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>THE ROSE FUND, LLC, THE ROSE FUND, INC., TRF HOLDINGS, INC., MICHAEL ALEXANDER, PAUL NELSON, and WILLIAM WRIGHT,<br><br>    Defendants. | No. C 03-04593 WHA<br><br>**ORDER GRANTING MOTION FOR TRANSFER OF FROZEN FUNDS TO THE UNITED STATES TREASURY** |

**INTRODUCTION**

In this securities action brought by the Securities and Exchange Commission, the Commission has filed a motion for an order directing payment to the United States Treasury of funds frozen pursuant to prior orders of the Court. To the extent stated below, the motion is **GRANTED**.

**STATEMENT**

The Securities and Exchange Commission filed this action in 2003, alleging that defendants, including William Wright, perpetuated a Ponzi scheme to defraud investors and committed violations of securities laws. According to the complaint, Wright was the primary perpetrator of the fraudulent scheme, whereby investors were induced to invest in what Wright

claimed were mortgage-backed securities with a high rate of return. Rather than invest in such securities, however, Wright and others spent investors' funds on personal items and used a portion of the funds to make payments back to investors.

Defendant Wright consented to entry of judgment and a permanent injunction against him, which this Court entered on December 10, 2003 (Dkt. No. 39). On November 15, 2004, an amended final judgment was entered against Wright, imposing disgorgement of $6,965.30 and a civil penalty of $50,000, due the next business day (Dkt. No. 204). According to the Commission, as of August 17, 2012, Wright had not paid anything towards these amounts and, as of March 6, 2013, had not "voluntarily paid" any of the amounts due (Massey Decl. ¶ 2).

Pursuant to an order dated October 28, 2003 (Dkt. No. 17), a receiver was appointed. The receiver distributed assets to the injured investors amounting to approximately 46 percent of the investors' allowed claims (Dkt. No. 262 at 7–8). The receiver was discharged on January 14, 2008 (Dkt. No. 270).

The October order also authorized the freezing of any accounts held by defendants. On January 6, 2004, counsel for the Commission provided notice of this asset freeze to National Bank of California ("NBCA") (Massey Decl. ¶ 3, Exh. A). NBCA froze accounts in the corporate names of IKW, Inc., and WIK, Inc., on the ground that "upon information and belief," Wright was the sole officer, agent, and signatory for the two companies. The Articles of Incorporation and Statement of Information for IKW indicate that it was incorporated in California on October 24, 2003, with Wright as the sole officer and agent (*id.*, Exh. B). Wright opened an account at NBCA in the name of IKW on November 24. On the documents submitted with the application to open the account, Wright stated that he was the sole authorized signatory (*id.*, Exh. C). Similarly, the Articles of Incorporation and Statement of Information for WIK indicate that it was incorporated in California on December 31, 2003, with Wright as the sole officer and agent (*id.*, Exh. D). Wright opened an account at NBCA in the name of WIK on December 31. On the documents submitted with the application to open the

account, Wright stated that he was the sole authorized signatory (*id.*, Exh. E). The total amount frozen in both NBCA accounts was $12,277.73 (*id.* ¶ 6).

As of April 1, 2013, the corporate status of both IWK and WIK was listed as "suspended" on the California Secretary of State's website (*see* kepler.sos.ca.gov, last visited April 1, 2013). The information available from the California Secretary of State's website indicates that Wright is the sole agent for service of process for both companies.

The Commission now moves for an order requiring NBCA to turn over to the Commission the funds frozen in the IKW and WIK accounts to allow the Commission to remit the funds to the United States Treasury. The Commission further requests that "any other funds obtained from the defendants in this action also be payable to the Commission for remission to the Treasury." No opposition or response has been received from any party. To the extent stated below, the motion is **GRANTED**.

## ANALYSIS

### 1. ALTER EGO TEST.

Whether the funds in the IKW and WIK accounts at NBCA, purportedly frozen pursuant to Court orders, should be turned over to the Commission depends on whether the corporations are alter egos of the Commission's judgment debtor, Wright. Our court of appeals has set forth the alter ego test as follows:

> Before the acts and obligations of a corporation can be legally recognized as those of a particular person, and vice versa, the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, *but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased*; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (quoting *Wood v. Elling Corp.*, 20 Cal. 3d 353, 365 n. 9 (1977) (citation omitted; emphasis in original)).

3

As to the unity of interest and ownership prong, Wright is the only listed corporate officer for both corporations and is the only signatory on the two NBCA bank accounts opened in the names of IKW and WIK. The account activity indicates that all deposit slips and checks drawing down the account were signed by Wright. According to the Commission, "there were no payments to employees, payments for merchandise, and no other indications to establish that the corporate accounts at issue were being used as corporate vehicles" (Mot. at 3). Instead, it appears that the accounts were used to hold funds that Wright alone deposited, to withdraw cash, and to make payments for personal expenses, such as a payment to Mercedes Benz (Massey Decl. Exh. H). The Commission states that it has been unable to identify any evidence of a business function or business presence of the two corporations, which are now both defunct.

As to the injustice prong, the facts of this case are such that an adherence to the fiction of the separate existence of the two corporations would be unjust. Wright consented to and was ordered to pay back funds and penalties due to his illegal conduct. Rather than timely make such payments, it appears that Wright incorporated the entities and opened up accounts in their names after he was aware that the Commission was proceeding against him, in the case of IKW, or after the Court had entered judgment, as was the case with WIK. To allow Wright to use the corporate fiction to hide funds would be to allow him to evade the effects of the Court's orders and the judgment against him. Accordingly, the Commission has established that the IKW and WIK corporations are alter egos of defendant Wright.

### 2. DISPOSITION OF THE FUNDS.

Having established that the funds in the two corporate accounts may be reached under the alter ego doctrine, the question becomes what may be done with the funds, which total $12,277.73. The Commission states that, at this point, distribution of the funds to identifiable injured parties is not feasible or appropriate, as the receivership was discharged over five years ago and the actual fraud was perpetuated ten to eleven years ago. Thus, even if the Commission was able to obtain accurate and current information about injured investors from the receiver,

4

1  the cost of distribution of pro-rata payouts to each injured investor would exceed the amount
2  available for distribution. Therefore, payment to the United States Treasury is a reasonable,
3  just, and appropriate resolution.

4      This order notes that the Commission has provided no reason why the frozen funds were
5  not made part of the funds available for distribution by the receiver at the appropriate time.
6  Instead, the Commission has waited until now to address this outstanding issue in an action long
7  since completed. Given the circumstances of this case, including the length of time that has
8  passed, the limited amount of funds at issue, and the clear and uncontested facts establishing
9  that the corporations are the alter egos of defendant Wright, this order concludes that the funds
10 should be turned over to the Commission, who shall deposit the funds with the United States
11 Treasury.

12     As to the Commission's request for an order that "any other funds obtained from the
13 defendants in this action also be payable to the Commission for remission to Treasury," the
14 request is **DENIED**. The Commission has provided no indication of what funds it expects to
15 obtain or in what amounts. The Commission may file an appropriate motion if such funds are,
16 in fact, recovered.

## CONCLUSION

18     To the extent stated below, the motion is **GRANTED**. NBCA is directed to pay all
19 monies held in the accounts of IWK and WIK by check to the order of the Securities and
20 Exchange Commission. As requested by the Commission, the check shall be delivered or
21 mailed to the Enterprise Services Center, Accounts Receivable Branch, 6500 South MacArthur
22 Boulevard, Oklahoma City, OK 73169, under cover of a letter that identifies the caption and
23 action number of this case and the name of this Court, and that indicates that the funds are being
24 paid for deposit by the Comptroller, Securities and Exchange Commission, into the United
25 States Treasury. NBCA shall simultaneously transmit photocopies of such payment and letter
26 to: the Clerk of this Court; the plaintiff's counsel of record; and Marsha C. Massey, Supervisory

Chief Litigation Counsel, Division of Enforcement, Trial Unit, Office of Collections, 100 F St., NE, MS-5985, Washington, DC 20549.

The hearing on April 11, 2013, is unnecessary and is therefore **VACATED**.

Furthermore, the Commission is hereby ordered to review the record of this action to determine the extent to which there are any other freeze orders or other injunctions and to report to the Court on how third parties and others affected may be relieved of any such stale obligations. Please report on this to the Court by **APRIL 30, 2013**.

**IT IS SO ORDERED.**

Dated: April 2, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE